IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:09cv321

| | |
|---|---|
| JOE B. HAYNES, GROVER P. PAYNE, KEN COLE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE RIDGE PAPER PRODUCTS, INC.,<br><br>Defendant. | ORDER OF DISMISSAL |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Subject-Matter Jurisdiction [Doc. 4] and the Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Lack of Subject-Matter Jurisdiction [Doc. 10].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider these motions and to submit recommendations for their disposition.

1

In December 2009, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended denying the first motion to dismiss as moot and granting the second motion. [Doc. 14]. The Plaintiffs timely filed objections to the recommendation that the second motion to dismiss be granted.

## PROCEDURAL & FACTUAL BACKGROUND

On August 17, 2009, the Plaintiffs filed a proposed class action for private nuisance against the Defendant. [Doc. 1]. The Plaintiffs alleged that the Defendant's pulp and paper mill located on the Pigeon River in Canton, North Carolina substantially interfered with their rights to use and enjoy their property due to the discharge of waste and chemicals into the water. [Id., at 1-2]. The Plaintiffs alleged diversity jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2)(A), claiming that "any member of a class of plaintiffs is a citizen of a State different from any defendant." [Id., at 3]. The Complaint alleged, however, that each Plaintiff was a North Carolina resident and that the Defendant, although a Delaware corporation, had its "headquarters" (presumably its principal place of business) in North Carolina. [Id., at 3-4]. The only cause of action alleged was nuisance for which the Plaintiffs sought compensatory damages. [Id., at 11].

The Defendant immediately moved to dismiss for lack of diversity jurisdiction because the Plaintiffs have the same citizenship as the corporate Defendant. [Doc. 4]; see, 28 U.S.C. §1332(c)(1) (a corporation is a citizen of any state in which it is incorporated and the state in which it has its principal place of business). In response, the Plaintiffs filed an Amended Complaint in which they alleged that sixty-nine members of the class reside outside North Carolina. [Doc. 7, at 3]. They also alleged that federal question jurisdiction exists because the case is brought pursuant to the "federal common law of nuisance." [Id.].

In the Amended Complaint, the Plaintiffs claimed that the Defendant discharges chemicals into the Pigeon River causing the river to be polluted and endangering those who live downstream of the plant. [Id., at 4-5]. Among the chemicals alleged to be discharged are aluminum, arsenic, barium, boron, chloroform, iron, lead, magnesium, manganese, mercury, and others. [Id.]. The Plaintiffs alleged that they are "entitled to the agricultural, recreational, and scenic use and enjoyment of their lands and the water bordering their lands." [Id., at 5]. The Defendant's "discharge of chemicals into the Pigeon River amount[s] to a private temporary nuisance actionable under the federal common law of nuisance[.]" [Id.].

The Plaintiffs nonetheless acknowledged in the Amended Complaint that a previous lawsuit against the Defendant's predecessor corporation, Champion, was unsuccessful because the Court found that it was a governmental, not judicial, function to determine what could be discharged from the plant. [Id.]. The Plaintiffs therefore alleged that because the government has the exclusive function to act as the monitor, they may only seek monetary relief as a remedy. [Id., at 5-6]. "[T]he relevant federal permit(s) issued by the EPA[1] under which Blue Ridge operates expressly provide that the 'permit ... does [not] authorize any injury to private property or any invasions of personal rights, [or] any infringement of Federal, State or local laws or regulations." [Id., at 6]. As a result, the Plaintiffs "bring this action for monetary damages for the Defendant's private temporary nuisance under federal common law which has been perpetrated on them and the proposed Class as downstream landowners." [Id.]. Significantly, the Plaintiffs do not bring this as a citizen suit to enforce the permit issued by the EPA.

The Defendant moved to dismiss again, alleging lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] [Doc. 11].

---

[1]Environmental Protection Agency.

[2]The Court finds the motion timely made because no answer had yet been filed. Fed.R.Civ.P. 12(b) ("A motion asserting any of these defenses must be made before pleading[.]"). In any event, federal courts have a *sua sponte* obligation to determine

The Defendant noted that in 1972 Congress amended the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§1251, *et. seq.*, by the Clean Water Act and the National Pollution Discharge Elimination System which governs the permitting of discharge of wastewater into rivers and streams. [Id., at 4]. After those amendments, the Defendant argued, the Supreme Court ruled that "the federal common law of nuisance in the area of water pollution is entirely pre-empted by the more comprehensive scope of the FWPCA." [Id.].

In responding to the second motion to dismiss, the Plaintiffs clarified that the Amended Complaint does not assert a claim of nuisance pursuant to state law. [Doc. 12, at 1]. Their only claim is one pursuant to the federal common law of nuisance. [Id.]. More specifically, the Plaintiffs argued:

> Make no mistake, while the CWA[3] does, in fact, generally serve to preempt federal common law nuisance claims, it is not an obstacle in this case to the claim alleged by Plaintiffs. Congress has expressly authorized this suit[.] In short, Blue Ridge operates the Canton Mill under a National Pollution Discharge Elimination System ("NPDES") permit granted to it in 2001 by the State of North Carolina. This NPDES permit allows Blue Ridge to run the Canton Mill in violation of the ... CWA by discharging pollutants into the Pigeon River immediately upstream from Plaintiffs'

---

subject matter jurisdiction and if, at any time, a court determines it does not have such jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(h)(3); Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008).

[3]Clean Water Act.

5

> homes. Significantly, the permit–issued under the auspices of the ... EPA and subject to the standard conditions for such permits as set forth in the Code of Federal Regulations ("CFR")–granted these Plaintiffs the right to maintain this action.

[Doc. 12, at 2].

The Plaintiffs attached as exhibits copies of the permit at issue and Standard Conditions of NPDES Permits. [Doc. 12-1; Doc. 12-3].

The Magistrate Judge rejected this argument and recommended that the Defendant's second motion to dismiss for lack of subject matter jurisdiction be granted. [Doc. 14]. He also recommended that the first motion to dismiss be denied as moot in light of the Plaintiffs' amendment to the complaint to clarify diversity jurisdiction. [Id.]. The Defendant did not file any objections to the Memorandum and Recommendation. The Plaintiffs did not file any objection to the Magistrate Judge's recommendation that the first motion to dismiss be denied as moot.

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d

6

1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007), *certiorari denied* 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original). Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Id. (quotation omitted). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."

7

Midgette, 478 F.3d at 622.

A motion pursuant to Rule 12(b)(1) challenges the court's jurisdiction over the subject matter of the plaintiff's complaint. Richmond, Fredericksburg & Potomac R.Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991), *certiorari denied* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992). The Plaintiffs have the burden of proving that subject matter jurisdiction exists. The Piney Run Preservation Ass'n v. The County Com'rs of Carroll County, Md., 523 F.3d 453, 459 (4th Cir. 2008), *certiorari denied* 129 S.Ct. 258, 172 L.Ed.2d 146 (2008), *citing* Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "When presented with a Rule 12(b)(1) motion, district courts are permitted to consider materials outside the pleadings and the [Plaintiffs] presented such materials in this case." Piney Run, supra., at n.6, *citing* Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006), *certiorari denied* 549 U.S. 887, 127 S.Ct. 273, 166 L.Ed.2d 152 (2006).

A motion to dismiss for lack of subject matter jurisdiction should be granted "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Evans, 166 F.3d at 647, *quoting* Richmond, Fredericksburg & Potomac R.Co., 945 F.2d at 768. The parties here do not dispute the material jurisdictional facts. They do

8

dispute the application of law to those facts.

## DISCUSSION

> The goals of the Clean Water Act are achieved primarily through the National Pollutant Discharge Elimination System (NPDES), a nationwide system of issuing permits to individuals and entities that discharge pollutants into United States waters. Discharge of pollutants into waters of the United States is prohibited absent compliance with the Clean Water Act. NPDES permits may be issued by either the EPA or a State that has been granted permitting authority.

Champion Intern. Corp. v. U.S.E.P.A., 850 F.2d 182, 185 (4th Cir. 1988). North Carolina has been granted such permitting authority. Id. The parties do not dispute that the Defendant operates its plant and discharges pollutants pursuant to a NPDES permit issued by North Carolina. The Plaintiffs do not allege that the permit is not being properly enforced. This is not a citizen suit for enforcement of either the permit or the CWA. See, 33 U.S.C. §1365(e).

The Plaintiffs generally acknowledge that the federal common law of nuisance in the area of water pollution has been entirely preempted by the amendments to the CWA and FWPCA. The Plaintiffs' argument is that the EPA enforces those statutes through the NPDES permit issued to the Defendant and that the NPDES permit, along with the Code of Federal Regulations, provides them as private parties with a nuisance cause of action. In other words, their "claim is not preempted because the NPDES permit

9

under which the Defendant operates the Canton Mill <u>and</u> the CFRs[4] expressly provide that Plaintiffs may bring a federal action for injury to their property rights or personal rights." [<u>Id</u>.].

> The precise language in the permit on which the Plaintiffs rely is:
>
> The issuance of this permit does not convey any property rights in either real or personal property, or any exclusive privileges, nor does it authorize any injury to private property or any invasion of personal right, nor any infringement of Federal, State or local laws or regulations.

[Doc. 15, at 8].

Likewise, the language of the pertinent Code of Federal Regulations provides that the "issuance of a permit does not authorize any injury to persons or property or invasion of other private rights, or any infringement of State or local law or regulations." [<u>Id</u>., *quoting* 40 C.F.R. §122.5(c)]. These provisions, Plaintiffs argue, show that Congress did not intend to preclude federal common law causes of action for nuisance notwithstanding the acts' "otherwise preemption of the field." [<u>Id</u>.].

The language cited by the Plaintiffs tracks the "citizen suit" provision of the FWPCA which provides that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any ... common law

___

[4]Code of Federal Regulation.

10

to seek ... any other relief[.]" 33 U.S.C. §1365(e) ("saving clause"). Despite the language of this provision, the Supreme Court has conclusively held that any federal common law claim of nuisance in the field of water pollution is preempted by the statutory and regulatory schemes at issue. Arkansas v. Oklahoma, 503 U.S. 91, 99, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). "In Milwaukee v. Illinois, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (Milwaukee II), we held that the Federal Water Pollution Control Act Amendments of 1972 . . . preempt the field of federal common law of nuisance." Id.

The Plaintiffs cite National Sea Clammers Ass'n v. City of New York, 616 F.2d 1222 (3rd Cir. 1980), *vacated* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), in support of their argument that the language of their permit, coupled with that of the regulation, falls within the aegis of the saving clause of §1365(e) and thus authorizes this action. The Plaintiffs recognize that the case was vacated by the Supreme Court but argue that the Court "declined to address [whether] a cause of action could be brought under the federal common law of nuisance by a private plaintiff seeking damages." [Doc. 8, n.5].

Contrary to the Plaintiffs' position, the Supreme Court explicitly held in Sea Clammers that the federal common law of nuisance *for water pollution*

11

has been entirely preempted by the FWPCA, whether the plaintiff is a private citizen or not. Sea Clammers, 453 U.S. at 22. Because the FWPCA entirely preempted any federal common law claim for nuisance arising out of water pollution, the Court declined to address the broader "question [of] whether the federal common law of nuisance could ever be the basis of a suit for damages by a private party." Id., at 11 n.17; *accord*, Connecticut v. American Elec. Power Co., Inc., 582 F.3d 309, 364, 373 n.41 (2nd Cir. 2009) (noting that in Sea Clammers, the Supreme Court "explicitly held that the FWPCA displaced federal common law in the entire area of water pollution); Plakas v. Middlesex County, Va., 803 F.2d 714 **2 (4th Cir. 1986) ("[I]n Sea Clammers, the Supreme Court ruled that the federal common law of nuisance in the area of water pollution had been entirely preempted by the enactment of the FWPCA[.]").

The Supreme Court in Sea Clammers also addressed an argument that the language contained within the statutory saving clause authorizes a federal common law claim for nuisance by a private party.

> Thus, both the structure of the [FWPCA] and [its] legislative history lead us to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied. Where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment.

12

Sea Clammers, 453 U.S. at 18; *accord*, People of State of Ill. v. Outboard Marine Corp., Inc., 680 F.2d 473, 476 n.4 (7th Cir. 1982).  Indeed, one year after Sea Clammers, the Supreme Court again addressed the language of the saving clause, stating that the respondents

> read the language of the saving clause broadly to preserve both a State's right to regulate its waters [pursuant to] 33 U.S.C. §1370, and an injured party's right to seek relief under "any statute *or common law*," §1365(e) (emphasis added).  They claim that this language and selected portions of the legislative history compel the inference that Congress intended to preserve the right to bring suit under the [common] law[.] We cannot accept this reading of the Act.

International Paper Co. v. Ouellette, 479 U.S. 481, 492-93, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987); Milwaukee II, 451 U.S. at 329 n.22 ("The fact that the language of [the saving clause] is repeated *in haec verba* in the citizen-suit provisions of a vast array of environmental legislation ... indicates that it does not reflect any considered judgment about what other remedies were previously available or continue to be available[.]"); *accord*, North Carolina, *ex rel*. Cooper v. Tennessee Valley Authority, __ F.3d __, 2010 WL 2891572 **8 (4th Cir. 2010).

If common law nuisance claims were held to be an exception to general federal preemption in this area, such would be the exception that swallows the rule.  All private actions would then be couched in terms of common law

13

nuisance, and the Supreme Court's repeated holdings regarding preemption in this are of the law would be obviated. The result would be a complete re-writing of the regulatory scheme and the elimination of state and federal regulatory agencies from regulation of industrial discharge into waters, and placing in their stead various courts to cobble together regulations from common law doctrines. Such cannot be what Congress intended.

The Court therefore rejects the objection raised by the Plaintiffs to the Magistrate Judge's recommendation. The Court finds the other objections contained within the "Summary of Objections" and not supported by argument or citation to authority do not warrant *de novo* review. [Doc. 15, at 4-5]. These objections are nothing more than a restatement of the same arguments made before the Magistrate Judge and, in fact, appear to have been lifted verbatim from the response to the motion to dismiss. Veney v. Astrue, 539 F.Supp. at 846. Having conducted a careful review of those objections, the Court accepts the Magistrate Judge's recommendation.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Subject-Matter Jurisdiction [Doc. 4] is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Lack of Subject-Matter Jurisdiction [Doc. 10] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

Signed: August 4, 2010

Martin Reidinger
United States District Judge